IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMANDA R. PELHAM, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-641-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Amanda R. Pelham filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Pelham applied for SSI benefits and disability insurance benefits in October 2005, alleging disability commencing March 31, 2003. (Tr. 59, 291). Her insured status for disability insurance benefits expired March 31, 2003. (Tr. 50, 66).

The Social Security Administration denied Pelham's applications for benefits both initially and on reconsideration. Pelham requested a hearing before an administrative law judge (the "ALJ"), and ALJ J. Frederick Gatzke held a hearing on June 6, 2007, in Fort Worth, Texas. (Tr. 311). Pelham attended the hearing with her non-attorney representative. On July 20, 2007, the ALJ issued a decision that Pelham was not disabled and was not entitled to disability insurance or SSI benefits because she was capable of performing her past relevant work. (Tr. 12-17). The Appeals Council denied Pelham's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the

impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

At issue is whether the ALJ's failure to find a severe mental impairment and his assessment of a residual functional capacity that includes no work-related mental limitations is compatible with governing legal standards and supported by substantial evidence

D.  ADMINISTRATIVE RECORD[1]

Born October 28, 1980, Pelham was twenty-two years old on her alleged onset date. Pelham was born with right brachial plexus palsy, which limited her ability to use her right arm. (Tr. 70, She completed high school and has had a variety of jobs, including work as a convenience store clerk, laundry attendant, optician, and telemarketer. (Tr. 71). The administrative record indicates that she has attended substance abuse counseling, but takes no medication for a mental impairment. Pelham testified that she attempted to obtain mental health services with a Mental Health and Mental Retardation (MHMR) facility, but they refused to help her because she was "not crazy." (Tr. 327).

As part of an investigation by Texas Child Protective Services (CPS) in 2005, Pelham underwent a psychological evaluation with Douglas E. Krug, Ph.D., and Bobbie Hart Lilly, Ph.D., in an effort to regain custody of her children. A mental status examination and a battery of

---

[1] Pelham's arguments involve allegations of a mental impairment and associated work-related limitations; therefore, the record is summarized only as it relates to those issues.

intelligence and personality tests were administered during a series of interviews in March, May and June 2005, and the consulting psychologists summarized their findings in a report issued on August 11, 2005. (Tr. 202-10). Pelham reported that her father died of leukemia in 1995. She was graduated from high school in 1999, and she had been married and divorced once. She had three children. Her oldest child resided with his father, but the two younger children were in CPS custody. In March 2005, Pelham was living with her boyfriend and they worked together mowing yards, but their relationship had dissolved by her final interview in June. (Tr. 202-03). Pelham recounted a lengthy history of drug abuse that began with marijuana use as a teenager and progressed to methamphetamine use and occasional use of cocaine. (Tr. 203). She had remained sober during her marriage, but after leaving her spouse, resumed using drugs. She stopped using drugs while pregnant, but occasionally smoked marijuana after her youngest child was born. She used no prescription medications and stopped using alcohol or marijuana in 2004. (Tr. 203).

Pelham's mood was stable, with an appropriate affect, throughout the assessment period. She exhibited normal cognitive processes, with no evidence of hallucinations or preoccupations. (Tr. 204). Her memory and concentration also appeared to be intact. (Tr. 205). Pelham indicated that she was capable of performing most daily tasks, but required some assistance with cleaning and yard work, primarily because of her physical impairment. She had several friends and reported being more selective in her relationships. She reported a difficult relationship with her mother, but was developing some insight into her situation. Her concentration, persistence, and pace were within a normal range. Pelham appeared to be learning better coping skills than escaping reality through drug use, and was becoming more self-reliant. (Tr. 205). Her IQ scores reflected average

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE—PAGE 5 OF 13

intelligence. (Tr. 206). She reported that she was not motivated academically, but her reading skills were equivalent to a twelfth-grade or better level. Her spelling skills were at a tenth-grade level, and her arithmetic skills were the equivalent of a seventh-grader level of achievement. (Tr. 206). Personality testing reflected an outcry for help, extreme anxiety, and paranoia. Her personal stress scores were at a damaging level, she exhibited a critical lack of self-esteem, and her responses on relationship testing reflected dysfunction. (Tr. 207-08).

Krug and Lilly diagnosed Major Depressive Disorder, Recurrent; Generalized Anxiety Disorder; Cannabis Abuse, Early Partial Remission; Amphetamine Dependence, Early Full Remission; and Dependent Personality Disorder. (Tr. 208). Pelham was assigned a current Global Assessment of Functioning (GAF) score of 50, with a historical score of 58.[2] (Tr. 209). Pelham's prognosis was characterized as difficult based on a lifetime of escapist behaviors that she needed to replace with coping behaviors and responsible decisions. She was considered intellectually capable of adult behavior, but had developed an emotional dependence on others and her history of depression was long-standing. Relapses were considered likely, rather than steady positive progression. (Tr. 209). Krug and Lilly recommended psychotherapy to address Pelham's depression, random substance abuse monitoring, and parenting classes. (Tr. 210).

State agency psychiatrist Jack Anderson, M.D., reviewed Pelham's claims at the initial stage

---

[2] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34. A GAF score of 51 to 60 reflects moderate symptoms or moderate impairment in functioning. *Id.*

of administrative review. Anderson completed a psychiatric review technique form on which he indicated that Pelham had a major depressive disorder, an anxiety disorder, a personality disorder, and a substance abuse disorder. (Tr. 252-60). He further found that Pelham's mental disorders resulted in mild restriction in her activities of daily living; moderate difficulty maintaining social functioning; moderate difficulty maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 262). Anderson found insufficient evidence to assess a mental impairment prior to the date Pelham was last insured for disability insurance benefits. (Tr. 264).

Anderson also prepared a mental residual functional capacity assessment. He found that Pelham was moderately limited in her ability to understand and remember very short and simple instructions; understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; interact appropriately with the general public; accept instructions and respond appropriate to criticism from supervisors; respond appropriately to changes in work setting; and set realistic goals or make plans independently of others. (Tr. 267-68). Anderson concluded that Pelham retained the capacity to understand, remember and carry out detailed, but not complex, instructions; make decisions; attend and concentrate for extended periods; accept instructions; and respond appropriately to changes in routine work setting. (Tr. 269). State agency medical consultant Leela Reddy, M.D., addressed Pelham's claims on reconsideration and affirmed Anderson's assessment as written. (Tr. 287).

E.  ALJ DECISION

The ALJ found that Pelham last met the disability insurance requirements on March 31, 2003,[3] which coincided with her alleged onset date of disability, and that she had not engaged in substantial gainful activity since that date. He further found that Pelham had severe right brachial plexus palsy, but did not have an impairment or combination of impairments that met or equaled the severity of any listed impairment. (Tr. 16). The ALJ found Pelham's testimony was not credible, and giving her the benefit of the doubt, assessed a residual functional capacity for sedentary work limited by an inability to use her right upper extremity. (Tr. 15). He further found that this residual functional capacity was compatible with Pelham's past relevant work as an optician. (Tr. 16). Accordingly, he concluded that Pelham was not entitled to disability insurance benefits and was ineligible for SSI payments. (Tr. 17).

F.  DISCUSSION

Pelham asserts that the ALJ's failure to find that she has a severe mental impairment, which resulted in his assessment of a residual functional capacity (RFC) that omits any work-related mental limitations, is erroneous and unsupported by substantial evidence. The Commissioner responds that any errors or omissions in the ALJ's determination were not prejudicial because there is substantial evidence that Pelham had no severe mental impairment during the relevant time period.

The Social Security disability regulations outline a process (referred to as "the technique")

---

[3] Disability must be established on or before that date to establish entitlement to disability insurance benefits. *See generally Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 n.1 (5th Cir. 1981). This date does not affect a claim for SSI benefits; however, SSI benefits cannot be paid for the time preceding an application for benefits even if disability began earlier. *See* 20 C.F.R. § 416.335.

to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). After rating the claimant's functional limitations, the administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id*. §§ 404.1520a(d), 416.920a(d). When the degree of mental limitation in the four given areas is none or mild, the mental impairment is generally not found to be severe unless the evidence otherwise indicates more than minimal limitation in the claimant's ability to perform basic work activities. *Id*. §§ 404.1520a(d)(1), 416.920a(d)(1). If the impairment is considered severe, the administration determines if the impairment meets or is equivalent in severity to a listed impairment. *Id*. §§ 404.1520a(d)(2), 416.920a(d)(2). If the claimant has a severe impairment that neither meets nor medically equals a listed impairment, the adjudicator proceeds to an assessment of the claimant's residual functional capacity. *Id*. §§ 404.1520a(d)(3), 416.920a(d)(3).

At the initial and reconsideration levels, a standardized document referred to as a Psychiatric Review Technique Form (PRTF) is prepared to record how the technique has been applied. *Id*. §§ 404.1520a(e)(1), 416.920a(e)(1). At the ALJ and Appeals Council levels, the written decision itself incorporates the pertinent findings and conclusions based on the technique, including specific

findings as to the degree of limitation in each of the functional areas. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). Unfortunately, the ALJ's decision does not reflect that he applied the technique or made the necessary assessment of Pelham's limitations in the four areas of functioning.[4]

The ALJ's only reference to Pelham's assertions of mental impairment is a summary of her 2005 psychological evaluation, which the ALJ observed had been within normal limits. (Tr. 15). This is a somewhat selective view of the consultative examiners' findings. The ALJ must consider all the record evidence and cannot "pick and choose" only the evidence that supports his position. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000) (citation omitted). Moreover, that same psychological evaluation was relied on by the state agency medical consultants, who did apply the technique, and in doing so, found that Pelham had severe mental impairments. (Tr. 252, 262, 264). The state agency medical consultants did not find any impairment meeting or equaling the criteria of a listed impairment, and accordingly, proceeded with an assessment of Pelham's mental residual functional capacity. (Tr. 252, 267-70).

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING

---

[4] The ALJ refers to the consultative examiner's comments with respect to the four broad areas of functioning, but does not affirm that he is accepting these opinions as his own. (Tr. 15).

96-6p. Social Security Rulings are published under authority of the Commissioner and are binding on the Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

The ALJ did not mention the state agency medical consultants' opinions or explain the weight, if any, he was giving those opinions. The Commissioner admits that the ALJ did not address the opinions of the state agency medical consultants, but opines it was not a prejudicial error. The court disagrees. Severity, for purposes of Step Two, requires only a de minimis showing that an impairment is severe enough to interfere with a claimant's ability to work. *See Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992). *See generally* 20 C.F.R. §§ 404.1520(c), 416.920(c); *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Given the conflict between the ALJ's failure to find a severe mental impairment and the state agency psychiatrists' contrary assessment based on the same consultative examiners' report, compounded by the ALJ's failure to comply with the prescribed technique, prejudice exists and requires that the administrative decision be reversed and remanded for further development.[5]

---

[5] The consulting psychologists recorded a long-standing history of depression, and the court will leave it to the Commissioner in the first instance to determine if this history reaches back to March 31, 2003, which was the last date that Pelham was insured for purposes of benefits under Title II of the Social Security Act. Pelham's admitted substance abuse might also impact her entitlement to benefits, but was not expressly relied on by the ALJ as a reason to deny her applications. The Contract with America Advancement Act of 1996 (CAAA), Pub. L. No. 104-121, 110 Stat. 847, amended the Social Security Act and renders individuals ineligible to receive disability insurance or SSI benefits if alcoholism or drug addiction is a contributing factor material to the Commissioner's determination that the individual is disabled. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). *See also* 20 C.F.R. §§

## RECOMMENDATION

The Commissioner's determination should be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 22, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

---

404.1535, 416.935.

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 22, 2008 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED AUGUST 4, 2008.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE